Good morning, Your Honors. My name is John Johnson. I'm appearing on behalf of Mr. Glenn Roe, and I request to reserve five minutes of time for rebuttal. The administrative law judge relied upon Dr. Lewis's findings that Mr. Roe did not have any manipulative limitations to support his finding at step number two in the sequential vascular disability that he had minimal limitations and therefore his eczema impairment was non-severe. Mr. Roe contends that Dr. Lewis's report should be given little weight because he was basically doing an orthopedic evaluation and he stated that he did not have any medical treatment records to review, which is understandable because Dr. Lewis performed his evaluation in March of 2007, and Mr. Roe did not begin treatment with a dermatologist until August of 2007, so he simply didn't have records available to him. We are contending that the administrative law judge applied a too stringent — How was the onset date of the alleged disability? 2008? I believe so, Your Honor. We are contending that the administrative law judge applied a too stringent standard at step number two because this Court has repeatedly held that that is a de minimis standard to dispose of groundless claims where — I think that doesn't really matter because he did find some severe disabilities or medical conditions and therefore he moved on. So, I mean, it seems to me that your better focus is on whether he didn't take it into account in the ultimate, you know, functional analysis, but what he did in step two doesn't really matter, does it? I think it matters, Your Honor, because if it is found the person has a severe impairment at step number two, then all associated functional limitations are to be considered at all remaining steps in the sequentiation disability. And he didn't even list eczema as an impairment at step number three. But he couldn't consider it. The real question is did he ultimately consider it? I don't believe he did, Your Honor. Well, that's a different question. That's all I'm pointing out, that the focus on whether he called it severe at that earlier juncture doesn't really matter. Yes, Your Honor. Okay. Mr. Rowe also contends that the administrative law judge failed to perform his duty, his higher duty, to scrupulously, consciously, and inquire into his impairments because the record shows that Mr. Rowe claimed he had severe impairments with oh, let me back up here. The record shows that Mr. Rowe was not represented and the judge asked him, did you have a chance to review the records? Mr. Rowe says that he could not do so because he didn't have a personal computer to access the CD disc that was sent to him, which really left him defenseless in regards to his ability to defend himself against Dr. Rowe, Dr. Lewis's findings. And we consider, we contend that this really prejudiced the case because the judge asked him, or as I say, Mr. Rowe testified that he basically could not work because of problems with his hands. But the record shows the judge only asked him what's wrong with your hands. The judge never asked him as to whether his condition had worsened because he went to see a doctor, started seeing a doctor finally, or whether he had flare-ups or didn't even ask him, do you have any problems using your hands? So we consider this important. Also, similarly, Mr. Rowe's sister was at the hearing and stated that when Mr. Rowe had boils on his feet, he was not able to stand and walk. But the record shows that when the administrative law judge's assistant asked the judge, should we swear her in, the administrative law judge says no. And we contend that this is not harmless error because the administrative law judge found that he was able to perform a full range of light work, which requires a good deal of standing walking. Kagan. Did he ask Rowe whether or not Rowe wanted her to testify? No. He never asked Mr. Rowe. It looks like Mr. Rowe's sister just volunteered that on his own. But we consider that, we contend that that's not a harmless error because light work requires a good deal of standing walking. And if he could not stand and walk here, then that finding is not supported by substantial evidence. The administrative law judge discredited Mr. Rowe on two grounds, based upon Dr. Lewis's findings and also one record from 2007 that said it looked like his condition was improving and he was not diligent in taking his medications. But the record shows that the administrative law judge disregarded Dr. Lewis's finding that he had fingernail and toenail changes that were consistent with correct chronic fungal infection. He disregarded all the subsequent records, treatment records from 2007 through 2010 that said he had extensive eczema lesions on his arms and hands and torso and legs and feet. And he disregarded the biopsy test that said he had seborrheic keratosis, which is basically a skin infection. And this court has held that a judge cannot basically disregard objective laboratory clinical findings here and turn the ultimate question of disability into a question of lack of credibility. As to credibility, the administrative law judge also discredited the observation of a Social Security worker in 2007 who observed that Mr. Rowe had difficulty putting his hands in his pockets because his hands were so painful. The judge discredited on the grounds that that he had a hand problem. I mean, he had a hand surgery, right? So one doesn't know whether that was the problem or not. He had a wrist fracture, Your Honor. But that's we're not contending that that caused him any further limitations. I understand that in terms of the observation. It's his. We don't know what it was connected to. That's true. Well, but he discredited on Dr. Lewis's findings and also that report. And we are contending that that was really improper because the regulations state that observations by social welfare agency workers is competent to establish functional limitations. The administrative law judge. Let me ask you something, or let me just see if I can get the facts straight. After he saw Dr. Lee, he did have the record. There are medical records that show that he had treatment for the eczema and for the fungus. Correct, Your Honor. And is there any medical record? Apparently, eczema can be a fungus or it could be something else. Eczema is not really a diagnosis. It's a symptom. Right. So was there ever any showing what this eczema was? No, Your Honor. In fact, as opposing counsels made a point of it, that there were several different diagnoses in the records. They described it as eczema, onchomosis. The laboratory test was keratosis. So there's some confusion about the diagnosis and all, but there's no dispute he had a medically determined impairment. Is there anything in the record in which any doctor said that because of his eczema on his hands and feet, he had a functional problem? None whatsoever, Your Honor. There's nothing in the record. That is the problem. This record is not fully developed here. The administrative law judge should have never gone ahead with this hearing, should have allowed him to tell him they didn't have enough records, needed reports from his physicians. He should have done what? He should have sent him off to somebody to see whether the eczema was a functional problem? That's correct, Your Honor. That would have been the best procedure because the initial evaluation was an orthopedic evaluation, and it really should have been by a specialist or someone. It was also three years before, right? Dr. Luce's evaluation was in March of 2007, and Mr. Rowe did not begin treatment until August of 2007. I know, but when was the hearing? 2010? I believe so. Somewhere around that time. Right. So it was three years before. But really, it was in 2010, and he had a lot of records by that time, treatment records, that showed he had really extensive lesions on his hands and feet and all that. The administrative law judge really, to fully develop the record, should have basically sent him out for a consultative examination after the hearing, had the record left with him, and got additional information back. He just didn't have enough information from either Dr. Luce or in the record as to how extensive it is, basically with the specific diagnosis and whether there's any associated functional limitations. Well, as it may, the administrative law judge went on and found that Mr. Rowe had the capacity to perform a full range of light work. He did not do a function-by-function analysis. That's because apparently he relied upon Dr. Luce's finding that he basically didn't have any serious functional limitations. But the administrative law judge did make a finding that he was not able to perform his past work in a cannery that was, the judge noted, was also unskilled work. And we have a Solskritti ruling, 8310, that says that the ALJ found that the irrecorded evidence treatment for eczema based on complaints of dry, itchy skin about the legs, torso, and arms. Was there evidence in the record that he had treatment, that he had eczema on his hands and feet? Hands and feet, Your Honor. There's a report in there about boils on his feet. This is incorrect is what you're saying? This is incorrect. He had eczema on his hands as well. Yes, Your Honor. And we have a ruling that states that most unskilled sedentary jobs require good use of the hands for handling and fingering. Solskritti ruling 8515 says that if you are not able to do, engage in fine dexterity, this limits the ranges of both sedentary and light work. And what we're contending here is that assuming that since the administrative law judge did not discredit the sister statement that he had boils that limit his capacity for standing and walking, then substantial evidence should be found not to support that he had a full range of ability to do light work. Similarly, if it's accredited based upon what the Solskritti workers observed, that he has problems using his hands, then this also would show that he, that does not support the administrative law judge's finding he could do a full range. And we're contending that the administrative law judge also erred when he relied solely on the medical vocational guidelines to find his disabled, because those guidelines only pertain to exertional limitations. Let me ask you, if we agree with you that the judge didn't adequately develop the record here, we would send this back for a new hearing, right? Yes, Your Honor. This case simply You wouldn't get to these other issues, correct? This, the record is not, that's exactly, exactly right, Your Honor. This case is not well-developed here, and the administrative law judge should have sent it for a judge. Would you say the balance of time for rebuttal? Yes, Your Honor. And this case should be remanded back to, in order to fully validate the record. That's our case. Okay. Good morning, Your Honors. Sharon Leahy, representing the Acting Commissioner of Social Security. I want to clarify a few things that Mr. Johnson has represented. The alleged onset date in this case goes back to August 1st, 2000. The real relevant time point for this Court is that this is a supplemental security income case. So the benefits are going to flow from the month of filing. In this case, the claimant filed his application in September 2006. So it's not the case that we're just looking at a record for skin impairments from 2007 to 2010. We're actually looking at a longer record. The records, the evidence in the record actually starts from December 2004, goes all the way through to August 2010. It's not just — But I assume that if something developed in the meanwhile, he would get partial benefits as of some mid-time date? Sure. There could be a finding at any time during the relevant period. It seems to me that the ALJ was just flat wrong about some of what he said about the eczema, whatever the reports. Because he said several different times that the reports show that he does not take any medications related to a skin condition. That's wrong. Well, Your Honor, it's — I think one of the problems is lumping together all of the skin conditions here. It's created some confusion. Well, you're assuming that they're different. I mean, I — Yes, Your Honor. My understanding is that eczema is a symptom, and it can be fungal, and it can be something else. Sure. It's actually its own diagnosis. And if you look at the medical records here carefully, it shows that each of his skin conditions were actually separate diagnoses with separate symptoms and treatments. The eczema seemed to affect his torso, his extremities. And the only evidence in the record is that it caused kind of dry, itchy, and scaly skin. There's some evidence that he had excoriations, which is indicating that he was itching and — It didn't say his hands and his feet? I'm sorry? Not his hands and his feet. No, Your Honor. There's no evidence of eczema on the hands and the feet. Now, if you go — Well, he said so. Clayman is saying that, but it's not accurate. If you look at the records, what he's referring to is actually a fungal infection. It's called onymycosis. And the most common feature of this is that it causes kind of a yellowing and thickening of the nails. That's the only symptom that seems to really stem on his hands and his feet, and it's actually his fingernails. The other conditions that Clayman points to, this seborrheic keratosis, he claims that it's a skin infection. That's actually a term for the most common kind of benign skin growth in adults. So there's certainly no evidence in the record. I mean, I think one of the issues here is that Clayman wasn't a reliable witness because he wasn't accurately reflecting what was in his medical records. And I think that's what the ALJ was really focusing on here. I mean, Clayman says a lot of things that are actually not accurate from his own medical records. You know, all of the physicians who assessed his physical capabilities concluded that he could perform light work, that he didn't have any manipulative postural limitations. Jamie Lewis was a medical consultative examiner who personally examined Clayman. Mr. Johnson alleges that this examination was somehow incomplete because Dr. Lewis didn't examine certain parts of the body. I'm not exactly sure what the Clayman is alleging. Importantly, Clayman had alleged a lot of orthopedic problems here, which aren't at issue before this court. He alleged all over pain throughout his body. And because of that, Dr. Lewis performed a very comprehensive exam, examined all of his extremities, his knees, his feet, his hands, things that, you know, if Clayman is saying this isn't good enough, Dr. Lewis didn't examine certain parts of my body that would have clearly shown you that I had some kind of limiting impairment here, Clayman doesn't identify what those parts of the body are or what they would have shown. What about the sister? Sure, Your Honor. You know, as to the Clayman's duty to develop the record argument, I think the important point is that there's nothing to further develop here. I mean, this isn't a case where the ALJ was rushed and didn't give the Clayman an opportunity to present evidence. This is not a quick hearing. The hearing is go. Your Honor, it was approximately a 30-minute hearing, which may seem quick to this Court, but is actually pretty standard for our ALJs. Our ALJs are really good at being a ---- That's not the real question. The question is the sister stands up and says something, which I suppose, if so, might have been of some pertinence. And the judge said, directly to our current conversation, i.e., whether he had a skin condition or his hands and feet, and he says, sit down, essentially. I mean, if he was interested in, if he was exploring the record, you'd think that he'd say, oh, fine, come up here, get sworn in and tell us whatever you want to tell us. Well, Your Honor, I don't think that it's a matter of being interested or probing into every comment that's made in the galley. I mean, the ALJ is under an obligation to hear and consider all evidence that he deems to be necessary and proper, and that's actually in our regulations. I think here we have someone in the galley making it up. Well, he's saying he has X-minus hands and feet, and he's saying it has some functional impact, right? That much he said. Yes, Your Honor. Right? And then you have, and the judge is about to say no, including saying that he wasn't getting any treatment when he was getting treatment. And then the sister stands up with something directly on point, and he doesn't want to know about it. Sure, Your Honor. It's not that, you know, I think that a couple of things. I mean, the first thing is that, at best, the sister's statement is duplicative of what the claimant was saying. I mean, as Your Honor just stated. That's true. I mean, there's a credibility issue, and there's also a specificity issue. I mean, part of your claim is that he didn't, he didn't have any proof that it was X-minus hands and feet, and here's somebody who purports to know. Sure. I think the issue is that, you know, speculative or subjective comments themselves aren't enough to compel a finding of disability here. That's not the question. Sure, Your Honor. The question is somebody should have heard her testify, asked her questions, and tried to figure out what she knew and whether it was relevant. Well, Your Honor, I disagree. I mean, I think that to have a precedent where our ALJs are required to, you know, look into any sui sponte comment from someone in the galley is not, it goes beyond the law of this circuit. I mean, Mr. Rowe did identify two of his siblings who had relevant information about his impairments. He identified his brother and another sister, Denise Rice. Never identified this sister. He didn't ask the ALJ at the hearing, can I admit my sister? The ALJ didn't tell the sister to sit down or cut her off. She stood up. He asked her what she had to say. She said what she had to say, which was a very vague, unsupported statement about walking like a zombie. Really is duplicative of the claimant's testimony about having these boils on his feet, which incidentally appear nowhere in the medical evidence. You know, this Court has told us how can we discharge our duty to develop the record. We can make a reasonable attempt to find the claimant's medical records. We did that here, both before and after the hearing. We can get a consultative examiner. We did that here. And you know what? They told us that he could perform light work with no manipulative limitations. And we had two more physicians review his records, and they agreed. I want to point out, too, that Dr. Lewis did not say that he did not review the medical records. He said that there were no imaging testing for him. And again, he was considering orthopedic complaints, which aren't at issue here. So it's not a case that he didn't have the records. It's not a case that he wasn't informed as to what the impairments at issue were here. There's simply nothing in the record to invalidate or even show any weaknesses in Dr. Lewis's findings. They were based on his own diagnostic testing, which all came back normal. I mean, we need to remember that the claimant here is making a very extreme allegation. He's saying that he has a skin condition or skin conditions. So what about the fact that the ALJ was, I mean, was departing from a flat wrong determination as to what the medical records showed about whether he had treatment for his eczema? He did, over and over again. Sure, Your Honor. So therefore, isn't everything else he says about it just irrelevant? Certainly not. Not irrelevant, but necessitating a rematch to say, all right, he actually did have treatment for this, so you were just wrong about that. No, Your Honor. The ALJ actually made his statement that the claimant doesn't take any medication for eczema based on the claimant's own reports to the agency, which he made on three separate occasions. Even though the medical records showed repeatedly that he did? Sure, Your Honor. But I think that the ALJ's continuing statement, which you haven't pointed out, was that it was the claimant's lack of diligence in taking his medication that really undermined his credibility in here. Did it say that? Did any doctor say that? It's in the medical records, and I can show you that. But we can start at the ALJ's decision, or if you'd like to show the evidence. Well, I didn't. I thought, how could he have failed to take medication that the ALJ said he never took? He never was prescribed. Yes, he was, Your Honor. So actually, if you look at the records that the claimant himself is pointing out, he actually bookends a treatment period that's about two and a half years long. It's actually with a physician's assistant named Steve Krikorians, and I think that's the Dr. Steve that claimant refers to. Dr. Steve is not a dermatologist. The doctor in his office is also not a dermatologist. The records from this office start from June 3, 2007, and that's at the office. I'm sorry? What is the name of the office? It's Community Comprehensive Care, and it's Steve Krikorians and Mark Heinrich. And these records are actually at the supplemental excerpts of record 248 to 266. And you'll see, I mean, claimant talks about these extensive lesions and boils all over his body. So I'm saying, well, I don't recall seeing any of this evidence in the records. So I look very carefully, and I find a grand total of three instances of lesions over a six-year period. So I look at them. The first one, June 2007, at page 260, lesions. Oh, but it also says they greatly improved with medications, but the claimant has been out of medications for three months. I go to the next time there's an instance of lesions. It's October 14, 2007. Now I'm at 263 of the supplemental excerpts of records. Again, lesions. And again, patient has no money for medication. So I go to the last reference of any lesions, June 18, 2008, at 257 of the record. And again, it says patient states that he has used up all medications. You know, if you look at the actual records, putting aside what the claimant is saying, which is not supported anywhere, you see very clearly that the claimant had actually been complaining about these skin conditions as early as 1999. He testified with certainty that the first time he started experiencing his fungal infection was in 1999. He admits today no treatment until seven years. So we've immediately cut out seven years from his eligibility period. So now we start at 2007. We go through to 2010, and what do we see? We see that the three early instances of lesions all correspond to instances where he went long periods of not being compliant with his medications. We see the new evidence that he submits. It actually shows that he started taking his medication, and guess what? His eczema improved. It actually was stable by August 2010. So it's not, Your Honor, that the ALJ got any of the evidence wrong here. It's that he didn't have any treatment for his eczema. No, Your Honor. The ALJ said that he wasn't taking medications for the eczema. I read you two sentences in which you said he was not, he was never prescribed medication for it. I'm sorry. From my brief or from the ALJ's decision? ALJ. Sorry? From the ALJ. I'm seeing that the claim the ALJ states on page 23 of the supplemental excerpts of record, the claimant submitted disability reports that show he did not take medications due to a skin condition. That's accurate, Your Honor. I'm sorry, Your Honor? I didn't hear what you said. That's accurate. He submitted three statements. In all of them, he identified four medications. I never said anywhere that he did submit medical records. It shows that he did. Okay. He goes on to say that his lack of diligence in medicating the complained symptoms weighs against his credibility. So I guess I'm not seeing the inaccuracy of the statement based on the medical records. Counsel, let me ask you a quick question. Yes, Your Honor. Given the fog which you have acknowledged here existed around the conditions that affected his skin or his nails, various things like that, and the only doctor he had seen at the behest of your client was an orthopedic physician, right? Correct. All right. What would have precluded, or wouldn't it have been better, maybe I should put it that way, wouldn't it have been better for the ALJ to just kind of hold the hearing in abeyance and send him for a consultation with a dermatologist so that there would have been a clearer or precise record to support what you have suggested is actually the circumstances here? Sure, Your Honor. You know, of course in every instance we would love to have a doctor who specializes in exactly what the impairment at issue is. It's more common for our claimants to see kind of general consultative examiners. You know, there are special instances where a claimant can be alleging an impairment or symptoms that are perhaps so out of the ordinary general MD training that we might go to a specialist. That certainly isn't in the evidence here. I mean, most notably, claimant only saw a dermatologist once. He primarily sought care from Steve Krikorians. And on one instance in 2008, Mr. Krikorians did refer a claimant to a dermatologist for keratosis. It was actually the benign skin growth Dr. Stee or Mr. Stee. I know what keratosis is, but that's not you. Was it within the ALJ's authority to direct him to a dermatologist for a consultation and a report? Could he have done that? Your Honor, I would guess that he could. I don't know exactly what the ALJ defines in terms of a CE here. I think had he done that one way or the other, we wouldn't be here. Well, I disagree, Your Honor. I mean, diagnosis is important because you have to have a medically determinable reason for your symptoms. But that's really the only import of diagnosis. It's never enough alone. I mean, here we have an instance where claimant could arguably have severe eczema. Still doesn't mean he has any physical limitations. So I don't see what we add by sending the claimant to a dermatologist except for going beyond what our regs require, and I don't think it would. Well, wouldn't the dermatologist, if it was a board-certified dermatologist, be able to tell you whether the eczema was of a kinder nature that would, in fact, impair his ability to work? No, Your Honor. Why not? Because a diagnosis alone of eczema isn't going to go to the symptoms. I mean, what Dr. Lewis here ---- No, but I'm not ---- I couldn't agree with you more because there's all kinds of degrees of eczema. But if he is maintaining, as he is, that his eczema is so severe that he's unable to work, wouldn't a dermatologist have been in a position to either say, in a very objective and medically sound way, that's correct or it's baloney? No, Your Honor. I don't think that they're really going to be able to say how, over a period of time, this claimant's eczema is affecting him. I guess what Your Honor is getting at, that the dermatologist could say, this is one of the most severe cases of eczema I've ever seen. It must have some limitation, but ---- Why couldn't he say, very simply, if it were true, this guy has rash and scale and pain all over his hands and he can't really move them very well? Exactly. With that pain. Couldn't he say that if it were true? Sure, Your Honor. Okay. As Dr. Lewis could. I mean, Dr. Lewis looked into all these things. No manipulative limitations. He was an orthopedist. I'm sorry? He was an orthopedic doctor. Correct. But I don't think that, you know, his examination of functional capability goes to a specialty in dermatology. I mean, I'm really not seeing how that's ---- My internist won't go anywhere near dermatology. Well, I mean, I think it's a fair point, too, Your Honor, that claimant has been seeing and is still seeing doctors or physicians assistants who aren't dermatologists. So to say that, why didn't we send him to a specialist to decide how bad his skin condition is when the fact that he's never seen one? I'm still ---- I mean, my big problem is that the ALJ, and I looked back at the point where you were saying it. I don't believe it says what you said it said. He said that he was not treated for the skin condition. And then he goes on and says SSR 96-7 indicates that his lack of diligence in medicating the complaint symptoms weighs against his credibility. Where do you see him saying anywhere that he was prescribed it but didn't take it?  No, he doesn't say it. And in fact, the only evidence that he didn't take it was he didn't take it when he ran out of money to buy it. Well, no, Your Honor. That's ---- you know, as to his, you know, the ---- there's actually three instances of him not taking medication. In one instance, he did say that. But the record is clear that that's not true here. I mean, he's availed himself of medical care for years. He admits that he's taken Vicodin and Soma for years. The ALJ was departing from an erroneous premise. He was wrong. Your Honor, I disagree. You know, I think that he had ---- I understand you're saying that the ALJ didn't articulate it. I don't think that it means the premise of it is false. It's clear from the records that Klamath wasn't taking his medication. It's equally clear that that's a valid reason to find someone not credible and to not give them benefits. He was taking it a great deal of the time. I'm sorry, Your Honor? He was taking it a lot of the time. Sometimes he didn't take it. A lot of times he did take it, as you pointed out. Well, Your Honor, I can point to the records where it shows that, you know, he more consistently than not wasn't taking the medication. So I'm confused about the records showing that he was consistently taking his edema. But then you said that it improved, and it did improve when he took it. Correct, Your Honor. It began to improve in March 2010, which is roughly a month before the ALJ's decision. Okay. You're way over your time. Thank you. If there's nothing further, I'll respectfully request that you affirm. Thank you, Your Honor. Thank you. You had a few minutes for rebuttal. I just might mention that apparently he did allege an onset date in 2000. We would not, on a remand, we would not be claiming that he was disabled during that period of time. We would certainly amend the onset date. When did your medical problems prevent you from doing ORC? We would amend the onset date to the date he first began regular treatment for his illness, again, in August of 2008. On an SSI case, you cannot get Benvis prior to date of application to begin with. So he was just, our clients do not understand the difference between disability and onset date. And we would amend that onset date. I'd also just like to mention that Dr. Lewis speculated, really, that he said that eczema, fungal infections, carries no functional implications. He didn't really say whether he could work or not work. I mean, he just basically guessed. He says that he thought it just would carry no functional implications. We contend that is not an accurate description of his medical problems, the nature of it, the severity of it. And it looks like, we would allege it looked like his condition worsened significantly after he saw Dr. Lewis. And so Dr. Lewis's speculation about his functional capacity really should not constitute substantial to support the denial. We contend that records really clearly it's not well developed and the case should be remanded back so it can be fully developed and sent him out to a doctor to examine his condition. Thank you, Your Honor. Thank you. Matter submitted.
judges: Paez, Berzon, Ezra